[Civ. No. 9941. First Appellate District, Division One.—March 16, 1937.]

DOROTHY D. EASTIN, Plaintiff, v. ROBERTS, CARPENTER & COMPANY et al., Defendants. LEWIS G. CARPENTER, Respondent, v. HOWARD G. PARK, Appellant.

Nathan Moran for Appellant.

Leo J. Rabinowitz for Respondent.

THE COURT.—The above action was commenced by Dorothy D. Eastin against defendants George D. Roberts, H. R. Plate and Lewis G. Carpenter, who were copartners doing business under the name of Roberts, Carpenter & Co., to recover on a promissory note executed to her by the firm. Defendant Roberts answered separately, alleging his adjudication as a bankrupt. Defendant Carpenter by his answer alleged various defenses, and therewith filed a pleading, which he designated as cross-complaint, against Howard G. Park and others. Therein it was alleged that Park and the other cross-defendants named had for a sufficient consideration

promised cross-complainant to pay the Eastin note, and their failure to do so, all to his damage in the amount thereof. Park moved to strike the cross-complaint on the grounds that the relief sought did not relate to or depend upon the note; that he was not a necessary party to the decision of any of the issues raised by the answers to the Eastin complaint, and that he was not a party to the contract alleged in her original complaint. The motion was denied, and he filed a demurrer with an answer to the cross-complaint, denying, among other things, the alleged promise.

The trial court entered judgment in favor of plaintiff Eastin against Carpenter and his firm for the amount prayed. It also found against Park on the issues presented by the cross-complaint and his answer thereto, and entered judgment against him and in favor of Carpenter for the amount of the note with interest. Park has appealed from that part of the judgment.

The business known as Roberts, Carpenter & Co. was carried on under that name by a succession of partnerships. It was established on November 1, 1927, the date of execution of the note in suit. On February 15, 1928, Plate withdrew, and the others continued under new articles, whereby they agreed to perform the obligations of the old firm—the note being one—in consideration of the transfer to them of the firm's assets. On April 11, 1928, George C. Harris entered the firm, and new articles, identical in substance with those last mentioned, were signed. Later L. S. Thomas became a partner, the obligations of the former partnership being assumed by a like provision. Following this, appellant Park joined the firm, and Harris and Carpenter withdrew. The new articles contained the following provision: ''First: That the parties hereto do hereby enter into a partnership for the purpose of transacting a brokerage and investment banking business in stocks, bonds and other securities under the firm name and style of Roberts, Carpenter & Co., for the purpose and subject to all and singular the terms and conditions hereinafter specifically set forth, . . . The partnership heretofore existing between George D. Roberts, Lewis Carpenter and John L. Thomas is hereby terminated, and the parties hereto agree to take over the assets and liabilities of the former copartnership, Roberts, Carpenter & Co., and that the assets of this partnership shall be and are the assets of said former

partnership, and the parties hereto do hereby assume and agree to pay and perform all of the present or existing obligations of said former partnership in consideration of said former partnership transferring, assigning and setting over to the partnership hereby created the assets of said former copartnership.''

It is clear that Carpenter was personally liable to plaintiff, and that the promises by the members of the various copartnerships to assume and pay the obligations of their predecessors were supported by valuable considerations. It was sought to be shown that Roberts at one stage of the history of the firm agreed to assume the note. However, the evidence fails to show a novation, and the court found in effect against this contention.

On the question whether appellant intended to assume the note different inferences might be drawn from the evidence. To attempt a recital thereof here would serve no useful purpose. It will be sufficient to say that the trial court's conclusions are fairly supported.

The point is made that the agreement was within the statute of frauds the requirements of which were not met, but we find no ground for this contention.

Upon the merits the findings are fully sustained, the only remaining questions being whether the orders by the trial court denying the motion to strike and overruling the demurrer were erroneous.

Section 442 of the Code of Civil Procedure provides that ''Whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract, transaction, matter, happening or accident upon which the action is brought, or affecting the property to which the action relates, he may, in addition to his answer, file at the same time, or by permission of the court subsequently, a cross-complaint. . . . '' It has been said that the right to proceed by way of cross-complaint depends upon whether the matter set up therein bears a necessary relation to the matter constituting the cause of action, and if such relation be present it is immaterial that the relief sought is independent of that prayed for in the complaint; that the cross-complaint need not tend to diminish the plaintiff's recovery but may demand affirmative relief distinct from that demanded by the complaint. (*Hanes* v. *Coffee*, 212 Cal. 777 [300 Pac. 963]; *California*

*Trust Co.* v. *Cohn,* 214 Cal. 619 [7 Pac. (2d) 297].) ▮ By virtue of an enforceable ·promise to the debtor to pay his debt the promisor becomes as between the parties the true debtor, while the promisee occupies the relation of surety, and the creditor may enforce the original obligation against either or both. (Civ. Code, secs. 1559, 2854; *Kreling* v. *Kreling,* 118 Cal. 413 [50 Pac. 546].) These relations are most frequently illustrated in cases which involve the assumption of mortgages. In this connection it has been said that in order to avoid circuity of action and protect the mortgagor as the intermediate party from being compelled to pay the debt, and then to proceed for redress against the mortgagee who has assumed the mortgage debt, equity permits the mortgagee to bring all parties who are liable before the court and have their rights adjusted in a single suit. (*Hopkins* v. *Warner,* 109 Cal. 133 [41 Pac. 868].)

▮ It is an established doctrine that after an obligation becomes payable the surety, before he has paid it and whether he has been sued by a creditor or not, may maintain an action against the debtor to compel him to pay the debt or perform the obligation, the creditor being made a codefendant, provided the creditor can himself enforce performance and neglects or refuses to do so. (Code Civ. Proc., sec. 1050; Civ. Code, sec. 2846; *Kreling* v. *Kreling, supra; Josephian* v. *Lion,* 66 Cal. App. 650 [227 Pac. 204]; 4 Pomeroy's Equity Jurisprudence, sec. 1417; 18 Cal. Jur., Mortgages, sec. 383, p. 67.) The right to such relief by way of cross-complaint was suggested if not decided in *Robson* v. *O'Toole,* 45 Cal. App. 63 [187 Pac. 110]; and the rule is recognized in other jurisdictions. (*Jasper County Nat. Bldg. & Loan Assn.* v. *Coen,* 233 Ill. App. 511; *Scott* v. *Norris,* 62 Okl. 292 [162 Pac. 1085].) ▮ In the present action the promise alleged is one which refers to and as certainly relates to the note in suit. The purpose of the statute is to avoid circuity of action, and the facts bring the case fairly within its terms.

The judgment is affirmed.